UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICO FLOWERS, | No. 2:12-cv-2047 MCE CKD P |
| Plaintiff, | |
| v. | ORDER AND |
| HIGH DESERT STATE PRISON, et al., | <u>FINDINGS AND RECOMMENDATIONS</u> |
| Defendants. | |

Plaintiff is a California prisoner proceeding pro se with an action for violation of civil rights under 42 U.S.C. § 1983.  Plaintiff is proceeding with claims arising under the Eighth Amendment against defendants Barnes, Hood and Sisson[1] (defendants), employees of the California Department of Corrections and Rehabilitation at High Desert State Prison (HDSP). Defendants have filed a motion for summary judgment.

I. <u>Plaintiff's Allegations</u>

In his first amended complaint, which is signed under the penalty of perjury, plaintiff alleges as follows:

1. On August 12, 2011, at approximately 6:45 a.m., plaintiff was placed in a holding cage approximately 4 feet wide and 6 or 7 inches deep pursuant to an order given by defendant Sisson

---

[1] Defendant Sisson is referenced as defendant "Sissons" on the court's docket.

and pending plaintiff's being placed in administrative segregation for failing to relinquish handcuffs when ordered to do so.  Plaintiff was forced to remain in the cage for approximately 14 hours.

2. Plaintiff was not given any food or water while in the holding cage, nor was he permitted to go to the bathroom.

3. There was no stool provided so plaintiff had to stand.

4. At approximately 4:45 p.m., plaintiff asked defendant Barnes why he was being denied an evening meal.  Defendant Barnes did not respond.  Plaintiff began to feel light headed from standing all day and not eating.

5. Plaintiff then asked defendant Barnes to summon medical staff.  Barnes did not do so.

6. At some point, plaintiff was restrained to the upper food port in his holding cage with a "triangle device" making it impossible for plaintiff to move.  Plaintiff suffered numbness for four hours as a result.

7. On or about November 16, 2011, defendant Hood threw plaintiff's food tray to the floor of plaintiff's cell.  Hood also denied plaintiff bedding, toilet paper, a tooth brush and toothpaste for approximately 4 days.

8. Plaintiff tried to obtain these items from other staff members who informed plaintiff the items would not be given to him because plaintiff was on defendant Hood's "shit list."

II. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . ." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

1  obligation to produce a factual predicate from which the inference may be drawn.  See Richards
2  v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902
3  (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than
4  simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record
5  taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
6  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

7  III. Defendants' Arguments And Analysis
8      A.  Defendant Sisson

9  In their motion, defendants do not dispute that plaintiff was left in a cage where he could
10 not sit down for approximately 14 hours at the direction of defendant Sisson.[2]  They also do not
11 dispute plaintiff was not provided an opportunity to use a restroom, but they do assert defendant
12 Barnes attempted to give plaintiff a meal around 4:45 p.m.  Plaintiff does not indicate that he ever
13 asked to use a restroom.  Defendants point to several reasons why they believe plaintiff being
14 forced to remain in the holding cage for 14 hours was appropriate, most notably plaintiff's
15 generally disruptive behavior and a large scale search that was occurring at that time at HDSP.

16 Defendants assert that after the incident with defendant Barnes described below,
17 defendant Sisson ordered Barnes to place restraints and a "handcuff retention device" on plaintiff.
18 This was due to plaintiff's "bizarre and threatening behavior" including claims by plaintiff that he
19 wanted to harm himself.  In his declaration, defendant Sisson denies the restraints "cause[d]
20 [plaintiff's] arms to be hiked up or place[d] his body in an unusual or uncomfortable position."
21 Sisson does admit that because of plaintiff's behavior, the chain on the restraining device was
22 adjusted so that plaintiff was secured closely against the side of the holding cell with his hands at
23 waist level.

24 The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment
25 forbidden by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986).  Pain

---

[2] As indicated above, plaintiff alleges the holding cage was 6 or 7 inches deep.  While defendants do not dispute this, or provide any information as to the actual depth of the cage, the court doubts plaintiff's measurement is accurate.  However, the court accepts plaintiff's assertion that he could not sit down while in the cage.

4

inflicted without penological justification is wanton and unnecessary. <u>Rhodes v. Chapman</u>, 452 U.S. 337, 346 (1981).  At a minimum, prison officials have to act with deliberate indifference to an inmate's health or safety to be found liable under the Eighth Amendment concerning conditions of confinement. <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992).  Also, pursuant to the Eighth Amendment, prison officials may not deprive prisoners "of the basic necessities of life ..." <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1258 (9th Cir. 1982).   "Prison officials must provide all prisoners with adequate food, clothing, shelter, sanitation, medical care and personal safety." <u>Id</u>.

       Taking the facts in the light most favorable to plaintiff, there is at least a genuine issue of material fact as to whether defendant Sisson was deliberately indifferent to plaintiff's health and safety by forcing plaintiff to stand for 14 hours--further limiting his movement for four of those hours with handcuffs--while not providing plaintiff with food, water or access to a restroom. There are also genuine issues of material facts as to whether plaintiff suffered more than di minimis physical injury as a result of defendant Sisson's actions and whether there were legitimate penological interests served by defendant Sisson's actions.  It is clear that plaintiff's disruptive behavior, and the large scale search which was occurring justified some restraint of plaintiff beyond what is normal.  However, defendants fail to point to anything demonstrating as a matter of law that placing plaintiff in a cell where he could sit or lie down, and have access to a toilet and water was not possible or would somehow compromise legitimate correctional objectives as they pertain to plaintiff or other prisoners.

       Defendants assert defendant Sisson is immune from plaintiff's claims under the "qualified immunity" doctrine.  Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  In determining whether a governmental officer is immune from suit based on the doctrine of qualified immunity, that court must answer two questions.  The first is, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  A negative answer ends the analysis, with qualified immunity protecting

1  defendant from liability. Id. If a constitutional violation occurred, a court must further inquire
2  "whether the right was clearly established." Id. "If the law did not put the [defendant] on notice
3  that [his] conduct would be clearly unlawful, summary judgment based on qualified immunity is
4  appropriate." Id. at 202.
5        It is clear under the Constitution that inmates cannot be subjected to cruel and unusual
6  punishment. Further, it is clear that pain inflicted without penological justification violates the
7  Eighth Amendment. As indicated above, there is a least a genuine issue of material fact as to
8  whether there was a valid penological justification for subjecting plaintiff to the conditions
9  described above because, from the facts before the court, it does not appear that moving plaintiff
10 to a cell where he could sit, have access to water and a toilet was not reasonably possible. Again,
11 there is evidence establishing that plaintiff's placement in the holding cage did not initially
12 present a Constitutional problem and that plaintiff's conduct warranted extended placement. But,
13 taking the facts in the light most favorable to plaintiff, a finder of fact could find that plaintiff's
14 clearly established rights arising under the Eighth Amendment were violated by the extreme
15 length of time plaintiff was subjected to the conditions identified above at the direction of
16 defendant Sisson.
17       For all of these reasons, defendant Sisson should not be granted summary judgment.
18       B.  Defendant Barnes
19       As indicated above, plaintiff asserts that at approximately 4:45 p.m., defendant Barnes
20 denied plaintiff his evening meal. At some point, plaintiff asserts he asked Barnes why his
21 evening meal was being denied and Barnes did not respond. According to Barnes, when Barnes
22 approached plaintiff with a tray containing plaintiff's evening meal, plaintiff used his hands to
23 direct a stream of urine through the holding cage at Barnes. Barnes retreated from the holding
24 cell with the food tray. In his opposition, plaintiff denies that Barnes attempted to give plaintiff a
25 dinner tray and that he used his hands to direct a stream of urine at Barnes. It is not clear whether
26 defendant Barnes was aware plaintiff had not eaten that day. Even considering the facts in the
27 light most favorable to plaintiff, there is no genuine issue of material fact as to whether Barnes
28 /////

violated plaintiff's Eighth Amendment rights because failure to retrieve a single meal for a prisoner without more, does not amount to "cruel and unusual punishment."

As for plaintiff's allegation that Barnes failed to summon medical care for plaintiff despite plaintiff's request that he do so, it is undisputed that a psychiatrist examined plaintiff and released him for placement in administrative segregation shortly after Barnes applied handcuffs to plaintiff. Accordingly, plaintiff has no claim against Barnes for denial of access to medical care.

C. Defendant Hood

Defendants are correct that plaintiff being denied a single meal by defendant Hood (when Hood threw plaintiff's dinner tray onto the floor of plaintiff's cell on or about November 16, 2011) cannot amount to "cruel and unusual punishment." Likewise, being denied bedding (sheets, blankets, pillows, etc.) for 4 days (without facts suggesting plaintiff was subjected to extreme cold as a result of not having blankets) or a toothbrush and toothpaste for that amount of time does not amount to "cruel and unusual punishment." See Hudson v. McMillian, 503 U.S. 1, 9 (1992) ("extreme deprivations" required for valid Eighth Amendment conditions of confinement claim).

In his opposition, plaintiff admits that he obtained "hygiene items" from inmates in neighboring cells while he was being denied such items from defendant Hood. At his deposition, plaintiff indicated there was only one time he actually had to go without toilet paper. Defendants' Exhibit 7 at 77-78. A single instance of being denied toilet paper cannot amount to "cruel and unusual punishment."

For all of these reasons, defendants' motion for summary judgment should be granted with respect to plaintiff's remaining Eighth Amendment claim against defendant Hood.[3]

/////

/////

---

[3] In light of the foregoing, defendants Barnes and Hood are also immune from suit under the "qualified immunity" doctrine because there is no genuine issue of material fact as to whether the actions of Barnes or Hood amount to a violation of clearly established statutory or constitutional rights of which a reasonable person would have known. See Harlow, 457 U.S. at 818.

7

IV.  Request For Judicial Notice

With their motion, defendants ask that the court take "judicial notice" of court documents from the Superior Court of Lassen County.  The request is denied as the court does not judicially notice documents, the court judicially notices facts and defendants fail to point to any specific facts the court should judicially notice.  See Fed R. Evid. 201.

Accordingly, IT IS HEREBY ORDERED that defendants' September 9, 2013 "request for judicial notice . . ." is denied.

IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 32) be granted with respect to plaintiff's remaining claims against defendants Hood and Barnes and denied with respect to plaintiff's remaining claim against defendant Sisson.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 3, 2014

*/s/ Carolyn K. Delaney*
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
flow2047.57

8